UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CAREY GARRISON**                          **CIVIL ACTION NO. 22-5295**

                                            **SECTION P**
**VS.**
                                            **JUDGE TERRY A. DOUGHTY**

**J.D. DRISKILL, ET AL.**                   **MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Plaintiff Carey Garrison, a prisoner at Allen Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately September 19, 2022, under 42 U.S.C. § 1983. He names the following Defendants: Warden J.D. Driskill, Officer Jason Fertal, Officer Gavin Mitchell, Lieutenant Billy, and Deputy William Ashcraft.[1] For reasons that follow, the Court should stay Plaintiff's excessive force and assault claims and dismiss the remaining claims.

### Background

Plaintiff states that on September 23, 2021, at Lincoln Parish Detention Center, Officer Jason Fertal handcuffed him and walked him to a cell. [doc. # 1, pp. 3, 5]. Plaintiff asked to speak with the warden, but Fertal refused. *Id.* at 5. While locked in the cell, Plaintiff banged on the cell door. *Id.* Fertal "called over his radio" to open Plaintiff's cell. *Id.* When the door opened, Fertal allegedly shocked Plaintiff with a taser device. *Id.* Fertal shocked him "after compliance." [doc. # 8, p. 4]. Plaintiff "hit the floor, hitting [his] head on the wall." [doc. # 1, p. 5].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Fertal took Plaintiff to "booking." [doc. # 1, p. 5]. Plaintiff claims that Fertal refused him medical attention. *Id.*

Plaintiff told Lieutenant Billy and Officer Gavin Mitchell that he needed to see the warden, that he did not feel safe around Officer Fertal, that Fertal beat him before, and that he feared for his life. *Id.* at 4, 5. Lieutenant Billy responded, "You going to have to do what you do." *Id.* at 4. Officer Mitchell told him the same thing. *Id.* Plaintiff claims that "they" refused him medical attention.

Plaintiff alleges that while he was using a telephone in the booking area, Fertal "pulled out his other gun" and threatened him with it.[2] *Id.* at 4. Plaintiff dropped the telephone and walked away. *Id.* Fertal then exited the "key" with his gun in hand. *Id.* Plaintiff knelt and placed his hands on his head. *Id.*

Plaintiff suggests that he then struck Officer Fertal because he feared Fertal would harm him again: "now I fear even more feared he would harm me again and hit Officer Fertal. [sic]." *Id.* Plaintiff and Fertal "went to the floor." *Id.* Plaintiff "put [his] hands up in surrender." *Id.* He claims that Fertal, Mitchell, Billy, and Ashcraft then beat him after he surrendered. *Id.* Billy hit him with "blow after blow[.]" *Id.* Officer Mitchell "delivered multiple close[d] fist" strikes to Plaintiff's "facial area after compliance." [doc. # 8, pp. 3-4]. Deputy William Ashcraft struck Plaintiff multiple times in his body and "facial area after compliance." *Id.* at 4. Plaintiff's hands were stuck under his body; he told the defendants that he could not move. [doc. # 1, p. 4]. He claims that Warden Driskill shocked him with a taser even though he saw Plaintiff surrender. [doc. #s 1, p. 4; 8, p. 4].

---

[2] Plaintiff does not specify whether he is referring to a "Taser" gun or another type of gun.

Plaintiff claims that "they" then handcuffed him, took him down a hall, beat him again, and refused him medical attention. [doc. # 1, p. 4]. He did not receive any medical care until he was transferred to another facility. *Id.*

Plaintiff seeks criminal charges against defendants, compensation, punitive damages, and the dismissal of his criminal charges. [doc. #s 1, p. 5; 8, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. *Heck v. Humphrey* and *Wallace v. Kato***

As above, Plaintiff claims that on September 23, 2021, Officer Jason Fertal shocked him with a taser device even after he was compliant. He later struck Officer Fertal because he feared Fertal would harm him. He claims that Fertal, Mitchell, Billy, and Ashcraft then beat him after he surrendered. He claims that Warden Driskill shocked him with a taser device, even though he saw Plaintiff surrender. He claims that "they" then handcuffed him, took him down a hall, and beat him again. He also alleges that while he was using a telephone in the booking area, Fertal "pulled out his other gun" and threatened him with it.

Plaintiff has pending criminal charges—second degree battery and resisting an officer with force or violence—arising out of the September 23, 2021, events above.[4] If Plaintiff is convicted of the pending charges, he may not be entitled to seek relief for his claims until any convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a

---

[4] TELEPHONE CALL TO LINCOLN PARISH DISTRICT ATTORNEY (March 29, 2023).

5

successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus).

While the rule in *Heck* does not extend to pending criminal matters, successful claims under Plaintiff's allegations *could* necessarily imply the invalidity of any future conviction. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

To explain, Plaintiff does not conceptually or temporally distinguish the factual bases of his criminal charges from the bases of his civil claims.[5] He suggests that he did nothing wrong: that he did not pose a threat, that he was unarmed and compliant, that he was defending himself, and that he therefore did not commit the crimes with which he is charged. In fact, Plaintiff asks this Court to dismiss the charges.

If Plaintiff prevails on his excessive force claims—by establishing *inter alia* that he was unarmed, compliant, and not posing a threat—the ruling here could necessarily imply that he did not commit the charged crimes. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007) (finding that because the plaintiff claimed he did nothing wrong, his excessive force claim was barred by *Heck*; the claim would necessarily imply the invalidity of his conviction of aggravated assault on an officer). Otherwise stated, the excessive force claims could constitute a collateral attack on the validity of any future conviction.

---

[5] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

Successful excessive force claims could imply the invalidity of a future conviction for another reason. Under LA. REV. STAT. § 14:18(7), "The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed . . . [w]hen the offender's conduct is in defense of persons or of property under any of the circumstances described in Articles 19 through 22." Under Article 19, "The use of force or violence upon the person of another is justifiable . . . [w]hen committed for the purpose of preventing a forcible offense against the person . . . , provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." LA. REV. STAT. § 14:19(A)(1)(a). Here, for instance, if Plaintiff proved that the officers used excessive force before he used any force or violence, he would essentially prove that his actions (if any) following the excessive force amounted to justifiable self-defense, thus undermining a potential conviction.[6]

The same result obtains to the extent Plaintiff claims that Defendant Fertal committed an assault under state law when Fertal "pulled out his other gun" and threatened Plaintiff with it. To reiterate, Plaintiff does not conceptually or temporally distinguish the factual bases of his criminal charges from the bases of his civil claims. In *Price v. City of Bossier*, 841 F. App'x 650,

---

[6] In *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996), the Fifth Circuit held that a Louisiana conviction for battery of an officer—a crime for which justification is an affirmative defense—prevented the plaintiff from suing for excessive force in connection with the incident. The court reasoned that "if the plaintiff proved his excessive force claim, he would essentially be proving that his battery was justified, which would undermine his conviction." *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (discussing *Hudson*). Similarly, in *Arnold*, 100 F. App'x at 323, the court reasoned: "[C]ertain convictions will prevent a plaintiff from bringing an excessive force claim. For example, we have held that a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct. . . . Texas law permits an officer to use any force-even deadly force-to protect against an aggravated assault. *Sappington,* 195 F.3d at 237. Because any force was justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault."

654 (5th Cir. 2021), for example, the court reasoned:

> Price's amended complaint re-asserts his state law claims against the officers but fails to add any additional factual allegations. These torts—assault, abuse of process, intentional infliction of emotional distress, false arrest, false imprisonment, negligence, gross negligence, and other 'intentional torts'— all stem from Price's arrest. Louisiana applies the *Heck* rationale to state law tort claims. . . . As with the excessive force claim, so these state law claims imply the invalidity of the underlying conviction. Since Price has failed to distinguish these torts from the factual basis for the battery conviction, they are inseparable and *Heck*-barred.

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. *See Kato*, 549 U.S. at 393-94. Critically, "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended." *Id.* (emphasis added); *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (opining that courts *should* stay proceedings "until the pending criminal case has run its course . . . .").

Here, it is unclear which of Plaintiff's criminal charges stem from which of Plaintiff's excessive force and assault claims. But at this stage it suffices that Plaintiff's excessive force and assault claims are at least *related to* rulings that will likely be made concerning his pending charges. Accordingly, the Court should stay these claims pending the outcome of Plaintiff's ongoing criminal prosecution.[7]

---

[7] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

**3. Medical Care**

Plaintiff claims that after Defendant Fertal shocked him with a taser device, which caused Plaintiff to fall and hit his head on a wall, Fertal took him to "booking" but refused him medical attention. [doc. # 1, p. 5]. Without identifying a defendant, Plaintiff also pleads, "They refuse me of medical." *Id.* at 4. Then, following excessive force claims against Fertal, Mitchell, Billy, and Driskill, Plaintiff claims that "they" refused him medical care. *Id.*

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Here, the Court instructed Plaintiff to file an amended pleading and: "(A) describe all medical care, treatment, medications, medical visits/appointments, evaluations, and/or equipment that he received for the medical needs he mentions in this complaint, and state *when* he received the care/treatment; (B) identify a responsible defendant(s); (C) explain *when* he requested medical care/assistance from the defendant; (D) explain *what* he told the defendant or what

medical care he requested; (E) explain *why* he requested medical care (in other words, what were Plaintiff's medical needs/symptoms?); and (F) explain *how* that defendant knew of and disregarded a substantial risk of serious medical harm to him[.]" [doc. # 7]. Plaintiff filed an amended pleading, but he did not provide the requested information or otherwise even mention his claims of lack of medical care. [doc. # 8]. Thus, Plaintiff appears to abandon these threadbare claims.

To the extent he does not abandon the claims, the claims are conclusory. First, he does not identify a responsible defendant for all the claims. Further, he does not specify, for example, when he requested care (if at all), to whom he directed his requests, what he requested, whether any defendant failed to arrange treatment or impeded treatment, what each defendant knew, or how defendants responded to any requests for care, to his serious medical needs, or to any substantial risk of serious harm. He does not allege that any defendant was deliberately indifferent. In addition, while Plaintiff does state that he hit his head and that defendants beat him, he does not specify what his serious medical needs were following the uses of force. The Court should dismiss these all-too-conclusory claims.

4. Threats

Plaintiff claims that while he was using a telephone in the booking area, Fertal "pulled out his other gun" and threatened him with it. [doc. # 1, p. 4]. Plaintiff dropped the telephone and walked away. *Id.* Fertal then exited the "key" with his gun in hand. *Id.* Plaintiff knelt and placed his hands on his head. *Id.*

Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of

10

action under Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191. "[M]ere allegations of verbal abuse or epithets, reprehensible though they may be, do not amount to a cognizable constitutional violation under Section 1983." *Matthews v. LeBlanc*, 2022 WL 2951759, at *1 (5th Cir. July 26, 2022). Plaintiff does not state a claim of constitutional dimension.

**5. Failure to Protect**

Plaintiff told Lieutenant Billy and Officer Gavin Mitchell that he needed to see the warden, that he did not feel safe around Officer Fertal, that Fertal beat him before, and that he feared for his life. [doc. # 1, pp. 4, 5]. Lieutenant Billy allegedly responded, "You going to have to do what you do." *Id.* at 4. Officer Mitchell told him the same thing. *Id.*

When Plaintiff filed his initial pleading, it was unclear if he was only providing background narrative or if he was claiming that Defendants Billy and Mitchell failed to protect him from harm. Thus, the undersigned instructed Plaintiff as follows: "if Plaintiff is claiming that a defendant(s) failed to protect him from harm, he should explain: (i) how and when a defendant had knowledge of a substantial risk of serious harm (i.e., explain exactly what he told a defendant and when); (ii) why there was a substantial risk of serious harm to him; and (iii) how a defendant disregarded a substantial risk of serious harm." [doc. # 7].

Plaintiff filed an amended pleading, but he did not provide the requested information or otherwise even mention any failure to protect him from harm. [doc. # 8]. Consequently, Plaintiff either does not seek relief for, or has abandoned, these allegations. The Court should therefore dismiss these ostensible claims without prejudice.[8]

---

[8] If Plaintiff does seek to raise failure-to-protect claims, he may notify the Court of his intent— and include the information the undersigned requested concerning his ostensible claims—in an objection to this Report and Recommendation.

11

**6. Separation of Powers**

As above, Plaintiff seeks criminal charges against Defendants.

There is no constitutional right to have a person criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).[9] Investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys. *See* LA. CODE. CRIM. PROC. arts. 61 and 62.

Plaintiff should direct his concerns to a local, state, or federal law enforcement agency. He should be aware that if a prosecuting authority investigates and chooses not to file charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); *see, e.g., Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

The Court should deny Plaintiff's requested relief.

---

[9] *See U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

**7. Dismissal of Charges**

Plaintiff seeks the dismissal of his pending criminal charges.

Although Plaintiff filed this action under 42 U.S.C. § 1983, his request is an implicit challenge to the very fact and duration of his physical imprisonment.[10] Plaintiff may, *after he exhausts his state court remedies*, pursue his request for immediate release from custody through a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998) (construing a request for release from pending state criminal proceedings as a habeas petition under Section 2241). Accordingly, the Court should deny Plaintiff's relief as an improper request for habeas corpus.

The undersigned again cautions that Plaintiff must first exhaust his available state court remedies before seeking habeas relief in this Court. *See id.* (observing that if "habeas corpus is the exclusive federal remedy . . . a plaintiff cannot seek the intervention of a federal court until he has first sought and been denied relief in the state courts, if a state remedy is available and adequate.").[11] Plaintiff is further cautioned that the Court may abstain under *Younger v. Harris*,

---

[10] *See, e.g., Sellers v. Plattsmier*, 637 F. App'x 111, 112 (5th Cir. 2015) (reasoning that the plaintiff's request to dismiss a bill of information was an implicit request for release); *Florence v. Garcia*, 713 F. App'x 306, 307 (5th Cir. 2018) ("Florence's requests for dismissal of the charges and for immediate release sound in habeas . . . ."); *Durall v. Lafayette Police Dep't*, 2011 WL 6181387, at *1 (W.D. La. Nov. 16, 2011), report and recommendation adopted, 2011 WL 6205542 (W.D. La. Dec. 13, 2011) ("Since dismissal of the charges would result in an immediate or at least speedier release from custody, plaintiff must seek such relief by way of a petition for writ of habeas corpus . . . .").

[11] *See also Dickerson v. State of La.*, 816 F.2d 220, 225 (5th Cir. 1987) ("Despite the absence of an exhaustion requirement in the statutory language of section 2241(c)(3), a body of case law has

401 U.S. 37 (1971), or *Dickerson*, 816 F.2d at 225 (5th Cir. 1987), if Plaintiff asks the Court to interfere with his ongoing criminal prosecution.[12] *See Gibson v. Orleans Par. Sheriff*, 2014 WL 1066987, at *1 (5th Cir. Mar. 20, 2014) (affirming abstention under *Younger v. Harris*, where a petitioner sought habeas corpus relief under 28 U.S.C. § 2241).

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Casey Garrison's excessive force and assault claims be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with these claims, he must, within thirty (30) days of the date the criminal proceedings against him conclude, file a motion to lift the stay;
>
> b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;
>
> c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he chooses) in this action until the state court proceedings conclude; and
>
> d. Defendants shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request to dismiss his charges be

---

developed holding that although section 2241 establishes jurisdiction in the federal courts to consider pre-trial habeas corpus petitions, federal courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner.").

[12] "Under the *Younger* abstention doctrine, federal courts should generally decline to exercise jurisdiction when: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (internal quotation marks and quoted sources omitted). Under *Dickerson*, "federal courts should abstain . . . if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner." *Dickerson*, 816 F.2d at 225.

**DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to pursue habeas corpus relief after he exhausts all available state court remedies.

**IT IS FURTHER RECOMMENDED** that Plaintiff's failure to protect claims (if any) be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims, including his request for criminal charges against defendants, be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 4th day of April, 2023.

Kayla Dye McClusky
United States Magistrate Judge